ORIGINAL

JOHN C. ELLIS, JR.
California Bar No. 228083
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: john_ellis@fd.org

FILED

08 APR 30 PM 12:42

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,           )   Case No. 08mj1160
                                    )
          Plaintiff,                )   ROGER T. BENITEZ
                                    )   NOTICE OF APPEAL TO THE
v.                                  )   DISTRICT COURT
                                    )
MARKO ALEXANDRO GOMEZ-CANCINO,      )
                                    )
          Defendant.                )
_____)

TO:   KAREN P. HEWITT, INTERIM UNITED STATES ATTORNEY;
      MICHELLE PETTIT, ASSISTANT UNITED STATES ATTORNEY; AND
      GERALD T. McFADDEN, APPOINTED COUNSEL:

   Marko Alexandro Gomez-Cancino, the defendant in this case, by and through counsel, John C. Ellis, Jr., and Federal Defenders of San Diego, Inc, hereby files this Notice of Appeal of the Court's disqualification of Federal Defenders of San Diego on April 24, 2008, by the Honorable Magistrate Judge Jan. M. Adler.

   This appeal is made to the District Court Pursuant to Rule 44 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3006A, and the Fifth and Sixth Amendments to the Constitution.

Respectfully submitted,

Dated: April 30, 2008

_____
JOHN C. ELLIS, JR.
Federal Defenders of San Diego, Inc.

JOHN C. ELLIS, JR.
California Bar No. 228083
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: john_ellis@fd.org

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Case No. 08mj1160 |
|---|---|
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPEAL FROM MAGISTRATE JUDGE DISQUALIFICATION OF DEFENSE COUNSEL.** |
| MARKO ALEXANDRO GOMEZ-CANCINO, | ) |
| Defendant. | ) |

I.

**PROCEDURAL BACKGROUND**

On April 14, 2008, at the San Ysidro Port of Entry, Mr. Gomez-Cancino was arrested and charged with the importation of 8.40 kilograms of methamphetamine. On April 18, 2008, the Honorable Magistrate Judge Barbara Lynn Major presided over the duty calender. Mr. Gomez-Cancino was not present. At that time, Magistrate Judge Major provisionally appointed Federal Defenders to represent Mr. Gomez-Cancino. The following Monday, April 21, 2008, Mr. Gomez-Cancino appeared before the Honorable Magistrate Judge Jan M. Adler. He was arraigned on the complaint, and due to an oversight, Gerald McFadden was appointed to represent Mr. Gomez-Cancino. Apparently, Mr. McFadden immediately recognized that Federal Defenders had previously been appointed, and contacted Magistrate Judge Adler's chambers. Thereafter, Federal Defenders' prior provisional appointment was confirmed and undersigned counsel was assigned to this case. The following day, defense counsel met with Mr. Gomez-Cancino and contacted his family.

1    On April 23, 2008, the Assistant United States Attorney assigned to this case, Michelle Pettit ("AUSA Pettit") informed undersigned counsel that Federal Defenders had a conflict. AUSA Pettit refused to divulge the exact nature of the conflict, provide defense counsel with the name of the client previously represented by Federal Defenders, or to even provide the name of the attorney who handled the case. Upon being informed of the potential conflict of interest, Mr. Gomez-Cancino and his family indicated that they want undersigned counsel to continue his representation of Mr. Gomez-Cancino.

On April 24, 2008, Magistrate Judge Adler presided over a status hearing regarding counsel. At the hearing, the government moved to disqualify counsel based on an alleged conflict. According to the government attorney, Federal Defenders has a conflict because one of their attorneys represented a person who had previously cooperated.[1] When pressed as to how this constitutes a conflict, AUSA Pettit explained, in part, that the government wanted to test the veracity of the former Federal Defender client, and that she would not feel comfortable testing his/her veracity with a current Federal Defender client. AUSA Pettit further complained that she "would feel uncomfortable" providing an attorney from Federal Defenders "certain information." Thereafter, and over an objection by defense counsel, the Court conducted an ex parte hearing with government counsel. After the ex parte hearing, Judge Adler indicated that the Court was going to grant the government's motion to disqualify Federal Defenders because there was a potential conflict of interest. Defense counsel objected to the Court's ruling.

This appeal follows.

## II.

## **THE MAGISTRATE JUDGE ERRED IN DISQUALIFYING COUNSEL BASED ON A POTENTIAL CONFLICT OF INTEREST.**

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right...to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. The Supreme Court has established that the Sixth Amendment right to counsel includes the counsel of once's choice. Caplin &

---

[1] Undersigned counsel ordered the audio recording of these proceedings in order to generate a transcript. This recording, however, did not contain the majority of the hearing, which was conducted at sidebar. The current statement of facts is based on undersigned counsel's memory, and it is not intended to be a verbatim account of the proceedings.

1  Drysdale, Chartered v. United States, 491 U.S. 617, 624 (1989) (finding that "the Sixth Amendment
2  guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can
3  afford to hire, or who is willing to represent the defendant even though he is without funds."). The Supreme
4  Court indicated that this right extends to the appointment of counsel. Gideon v. Wainwright, 372 U.S. 335
5  (1963). When the government seeks to disqualify a defendant's chosen attorney based on an alleged conflict,
6  the government bears a "heavy burden" of demonstrating either an actual conflict or a serious potential for
7  such conflict posed by the representation. See United States v Washington, 797 F2d 1461, 1465-1466 (9th
8  Cir. 1986); see also Wheat v United States, 486 U.S. 153, 163 (1988).

9       Here, the government attorney's amorphous and vague assertions do not even arise to a showing of
10 "a serious potential" for a conflict of interest. The government attorney raised two contentions: one, the
11 government wanted to test the veracity of a defendant who had previously been represented by Federal
12 Defenders and who had already been sentenced; and two, because Federal Defenders had previously
13 represented a person who gave some information that may relate to this case, the government attorney "would
14 feel unconformable" providing an attorney from Federal Defenders with certain information .[2]

15       The government attorney's proffered reasons for disqualifying defense counsel do not comply with
16 Sixth Amendment or Due Process jurisprudence. First, by failing to provide the name of the alleged former
17 client, the government attorney made it impossible for defense counsel to investigate the alleged claim or to
18 seek waivers.[3] The Supreme Court has recognized "that a defense attorney is in the best position to determine
19 when a conflict exists, that he has an ethical obligation to advise the court of any problem, and that his
20 declarations to the court are 'virtually made under oath.'" Mickens v Taylor, 535 U.S. 162, 167-68 (2002)
21 (quoting Holloway v. Arkansas, 435 U.S. 475, 485-86 (1978)). Defense counsel is no position to evaluate
22 a conflict when the government even fails to provide the name of the client causing the conflict. This makes
23 sense, because even "[j]oint representation is not per se violative of constitutional guarantees of effective

---

25 [2] This contention is highly suspicious. According to the information in the complaint,
26 Mr. Gomez was arrested at the port of entry after a pre-primary K-9 alert. It is clear that this arrest was not part of a proactive investigation.

27 [3] Government counsel could have contacted the prior Federal Defender attorney to advise of the
28 situation.

1 assistance of counsel." <u>United States v. Sutton</u>, 795 F.2d 1415, 1419 (9th Cir. 1986). Thus, although Fed.
2 R. Crim. P. 44(c) imposes a duty upon courts in cases of joint representation to ensure that the defendants are
3 aware of their right to separate counsel, the court need not appoint separate counsel if the defendants' choice
4 of counsel is informed. <u>See id.</u> at 1420-21; <u>see also</u> <u>United States v Linton</u>, 502 F. Supp 871, 876 (E.D. Nev.
5 1980) (Finding that "until an actual conflict is shown to exist or can be reasonably foreseen, an attorney may,
6 in good faith, represent codefendants . . . to prevail on a conflict of interest claim, the complaining party has
7 the burden of establishing that the joint representation in fact has created a conflict of interest. A court may
8 not find a conflict of interest out of mere conjecture as to what might have been shown. Conflict issues are
9 not to be decided on the basis of speculation, but by a considered determination of whether, in fact, a conflict
10 of interest exists.") In the absence of knowing the identity of a former client, defense counsel is not a position
11 to seek a waiver, or to know what type of waiver to seek.

12     Second, disqualifying defense counsel based on an ex parte communication with the government
13 attorney is perverse to the American system of justice. Adversary proceedings protect the defendant's due
14 process rights by providing the defendant a chance to explain or rebut the prosecution's arguments. <u>United</u>
15 <u>States v. Thompson</u>, 827 F.2d 1254, 1257 (9th Cir. 1987). Here, during the portion of the hearing that defense
16 counsel was allowed to participate in, government counsel failed to cite any concrete facts that established
17 a potential conflict of interest. It is unclear what additional information was provided during the closed
18 proceedings. It is clear, however, that the proceedings, which took place in the absence of defense counsel
19 and his ability to explain or rebut the government attorney's assertion, clearly violated Mr. Gomez-Cancino's
20 due process rights.

21     Moreover, appointment of counsel is not part of the adversary process in which the government
22 normally plays a role. The Criminal Justice Act, 18 U.S.C. § 3005 <u>et seq</u>., gives the executive branch no role
23 in decisions concerning appointment of counsel. Rather, the matter is entrusted entirely to the co-equal,
24 coordinate branch, the judiciary. Obviously, in designing the mechanism for appointment of counsel,
25 Congress was aware of the pernicious effects of allowing the executive to meddle in the relationship between
26 and attorney and a person it prosecutes. As the Supreme Court has recognized, the "Government may seek
27 to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at
28 his side; but trial courts are undoubtedly aware of this possibility, and must take it into consideration along

1 | with all of the other factors which inform this sort of a decision." Thus, the coalescence of excluding defense
2 | counsel and involving government counsel must result in the reversal of the magistrate judge's order.

### III.

### CONCLUSION

The magistrate judge violated Mr. Gomez-Cancino's Sixth Amendment right to counsel and Fifth Amendment right to due process when it disqualified Federal Defenders based on an alleged potential conflict of interest that was presented in an ex parte proceeding. During the portions of the proceedings that complied with due process (*i.e.,* the portions where defense counsel was present), the government failed to meet is heavy initial showing of a conflict. Accordingly, because the proceedings and the magistrate judge's order disqualifying Federal Defenders are violartive of Mr. Gomez-Cancino's constitutional rights, the order disqualifying Federal Defenders should be reversed. See United States v. Gonzalez-Lopez, 548 U.S. 140 (2006) (finding that the Sixth Amendment right to counsel of choice is not subject to harmless-error analysis).

Respectfully submitted,

Dated: April 30, 2008

_____
JOHN C. ELLIS, JR.
Federal Defenders of San Diego, Inc.